IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

JEREMY P. PUCKETT,

               Petitioner,

       v.

T. FELKER,

             Respondent.

Case No. CIV 06-1200RJB

ORDER ON PETITION
FOR WRIT OF HABEAS
CORPUS

This matter comes before the court on petitioner's petition for writ of habeas corpus. Dkt. 1. The court has considered the relevant documents and the remainder of the file herein.

INTRODUCTION

Petitioner is a state prisoner currently incarcerated at High Desert State Prison in Susanville, California. He filed this petition for writ of habeas corpus to challenge his 2002 Sacramento County conviction of special circumstance murder and robbery. Respondent filed an answer and relevant portions of the record. Dkt. 21. Petitioner filed a traverse. Dkt. 36. A review of the record shows that the claims do not warrant habeas relief. Accordingly, the petition should be denied and the case dismissed with prejudice.

PROCEDURAL AND FACTUAL HISTORY

Petitioner was charged by complaint on September 20, 2001, with (Count 1) special circumstance murder (Pen. Code §§ 187(a) and 190.2(a)(17)); (Count 2) robbery (Pen. Code § 211); and (Count 3) possession of a firearm by a felon (Pen. Code § 12021(a)). The complaint further alleged that petitioner

1   used a firearm in the commission of the first two counts and had two prior convictions.

2        On February 8, 2002, the jury convicted petitioner of murder and second degree robbery (Counts 1

3   and 2).  The special circumstance was found true and petitioner was found to have been armed with a

4   firearm in the commission of the crime.  The jury acquitted petitioner of being a felon in possession of a

5   firearm (Count 3).  The trial court found that petitioner had two prior serious felony convictions.  On

6   March 14, 2002, petitioner was sentenced to life without the possibility of parole plus a determinate term

7   of 11 years.

8        The California Court of Appeal summarized the facts of the case as follows:

9   *Testimony Of Israel Sept*

10  Sept, also known as Easy, met the victim, Anthony Galati, at an Easy Stop store on March 13,
    1998. Galati was with Larry Middlebrooks, also known as Richard Pryor, whom Sept knew
11  previously. Sept went with Galati and Middlebrooks to an apartment Middlebrooks shared with
    William Van Hill. Later, Angela Dvorsky and a man named Jaymo came to the apartment, but
12  Jaymo soon left. Still later, defendant arrived. Sept wanted to sell Middlebrooks and Galati drugs
    but could not because Galati only had a $100 bill and Sept had no change. Middlebrooks and Galati
13  left the apartment and returned twice looking for change, after which Sept sold Middlebrooks some
    drugs. Middlebrooks and Patty Bostic went into the bathroom. Van Hill was in his bedroom.
14
    Sept went to the bathroom to talk to Middlebrooks and sell him additional drugs. At the time,
15  Dvorsky was sitting on Galati's lap in the dining room. When Sept returned from the bathroom,
    Galati was lying prone on the living room floor. Defendant was standing over Galati with a gun in
16  his hand, demanding money from Galati. Defendant threatened to shoot everyone in the apartment.
    Sept told him he could not do that and get away with it, then Sept went back to the bathroom to
17  warn its occupants to stay there. As Sept was leaving the bathroom, Van Hill came out of his
    bedroom. He returned to his bedroom at the urging of Sept and Middlebrooks.
18
    When Sept returned to the living room, Dvorsky was on Galati's back, tying his hands up with two
19  electrical cords, one black and one white. When Dvorsky finished, defendant told Sept, "Come on.
    Let's go." Sept and defendant lifted Galati to his feet and they left the apartment, with Dvorsky
20  following. They entered the car, putting Galati in the backseat, lying down. Dvorsky laid down on
    top of him.
21
    Defendant drove the car away from the apartments and eventually to a rural area. Defendant
22  stopped the car and, with Dvorsky's help, took Galati out of the car. Dvorsky got back into the car,
    and Petitioner took Galati behind the car. Sept heard two gunshots, after which defendant entered
23  the car and drove to an industrial area where they left the car. They walked to a motel, where Sept
    checked them in. Sept left the room and went home, leaving defendant and Dvorsky there.
24
    *Other Evidence*
25
    Larry Middlebrooks met Tony Galati at the Easy Market on March 13, 1998. Later that evening,
26  Galati approached Middlebrooks and asked where he could purchase drugs. They went to the
    apartment shared by Middlebrooks and Van Hill, trying to purchase rock cocaine but [sic]
27  unsuccessful because Galati only had a $100 bill and no change. They finally purchased rock
    cocaine elsewhere and both later returned to the apartment.
28
    William Van Hill, Larry Middlebrooks's roommate, had met defendant before March 13, 1998.

Sometime after 10:00 p.m. on March 13, 1998, Van Hill went to bed. Defendant, Sept, Dvorsky, Galati, and others were in the apartment at the time. After hearing the noise of someone whimpering, Van Hill came out of the bedroom and told Sept they would have to leave. After Van Hill had gone back to bed, he heard Sept and Petitioner talking. Again coming out of the bedroom, Van Hill saw Galati and Dvorsky sitting on the floor. Defendant and Sept were aggressively demanding Galati's money and keys. They grabbed Galati by the arms and took him out the front door.

Patty Bostic was at the apartment shared by Middlebrooks and Van Hill on the evening of March 13, 1998, where she saw defendant and others. She went into the bathroom to smoke rock cocaine with Middlebrooks. Twice, Sept came to the door of the bathroom to ask Middlebrooks if Galati had money. She heard scuffling and a man asking someone to stop hitting him. Sept came to the bathroom door and told Bostic and Middlebrooks to stay in there because "defendant wants to kill everybody in the house." Bostic heard the front door open. When she later came out of the bathroom, everyone was gone.

Galati's body was found on March 14, 1998, along White Rock Road in Sacramento County. He had died from two gunshots to the back of his head. His hands were tied behind his back with white and black electrical cords, and his wallet and other valuables were gone. His car was found two days later at a nearby apartment complex, fully engulfed in flames.

*People v. Puckett*, 2003 WL 22506535 at *1-2 (Cal.App. 3 Dist.) (Dkt. 23, Lodged Document 4, at 2-4).

Petitioner filed a direct appeal with the California Court of Appeal, Third Appellate District, which affirmed his conviction on November 5, 2003. Dkt. 23, Lodged Document 4. Petitioner's petition for review was denied by the California Supreme Court on February 4, 2004.

On January 7, 2005, petitioner filed a petition for writ of habeas corpus in the Sacramento County Superior Court. The petition was denied on February 9, 2005. Petitioner filed a traverse to the petition for writ of habeas corpus; the Sacramento County Superior Court construed the traverse as a motion for reconsideration and denied the motion on May 11, 2005.

On April 8, 2005, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Third Appellate District; the petition was denied on April 21, 2006. Petitioner then filed petitions for writ of habeas corpus in the California Supreme Court on June 10, 2005, and November 16, 2005; the petitions were denied on May 10, 2006.

On June 2, 2006, petitioner filed this petition for writ of habeas corpus. Dkt. 1. The court has carefully reviewed the entire record in this case.

<u>CLAIMS</u>

Petitioner raises six claims in his petition, which are paraphrased as follows:

1.     The prosecutor poisoned the jury with her prejudicial inferences that petitioner murdered Ms. Angela Dvorsky.

ORDER
Page - 3

2. Denial of cross-examination: the court erred in denying petitioner inquiry into Sept's "other" motive for framing petitioner.

3. The court erred in excluding evidence that Angela Dvorsky admitted to setting up victims to rob.

4. The evidence was insufficient to support these convictions.

5. Ineffective assistance of trial counsel for failure to investigate or call witnesses at trial.

6. Improper use of petitioner's prior felony conviction.

Docket 1.

In his traverse, petitioner discussed two additional bases for relief. Petitioner contends that the prosecutor committed prosecutorial misconduct by stating in her opening statement "how Sept came forward to testify to only protect his family from petitioner" (Dkt. 36, at 7); and that there was insufficient evidence to convict him because Sept's testimony was not adequately corroborated (Dkt. 36, at 21-23).

## EXHAUSTION

Before claims may be raised in a federal habeas corpus petition, state remedies must be exhausted; or an applicant must show there is either an absence of available state corrective process or that circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1); *see also, Rose v. Lundy*, 455 U.S. 509 (1982). A claim has been exhausted once it has been fairly presented to the state's highest court and the court has had the opportunity to rule on the merits of the claim. *See O'Sullivan v. Boerckel*, 119 S.Ct. 1728, 1733-34 (1999); *Picard v. Connor*, 404 U.S. 270, 275-276 (1971); *Batchelor v. Cupp*, 693 F.2d 859, 862(9th Cir. 1982), *cert. denied*, 463 U.S. 1212 (1983).

A petitioner must present the claims to the state's highest court based upon the same federal legal theory and factual basis as the claims are subsequently asserted in the habeas petition. *Hudson v. Rushen*, 686 F.2d 826, 829-830 (9th Cir. 1982), *cert denied* 461 U.S. 916 (1983); *Schiers v. California*, 333 F.2d 173, 176 (9th Cir. 1964). Specifically, a petitioner must apprise the state courts that an alleged error is not only a violation of state law, but a violation of the Constitution. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). Vague references to broad constitutional principles such as due process, equal protection, or a fair trail do not satisfy the exhaustion requirement. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), <u>cert.</u>

1    denied, 120 S.Ct. 815 (2000).  A petitioner must include reference to a specific federal constitutional

2    guarantee as well as a statement of the facts that entitle the petitioner to relief.  *Gray v. Netherland*, 518

3    U.S., at 162-163.

4        A petitioner who has not exhausted state court remedies may be excluded from presenting the

5    issues to the state's highest court when the petitioner has not complied with a state procedural rule.  *Harris*

6    *v. Reed*, 489 U.S. 255, 260 (1989).

7        When a state prisoner defaults on federal habeas claims in state court pursuant to an independent

8    and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can

9    demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or

10    show that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman v.*

11    *Thompson*, 501 U.S. 722, 750-751 (1991).

12        *Cause and Prejudice*:   To satisfy the "cause" prong of the cause and prejudice standard, petitioner

13    must show that some objective factor external to the defense prevented him from complying with the

14    state's procedural rule.  *Coleman*, 501 U.S. at 752-753 (citing *Murray v. Carrier*, 477 U.S. 478, 488

15    (1986)).  Prejudice exists if the alleged errors were of constitutional dimensions and worked to the

16    defendant's actual and substantial disadvantage.  *United States v. Frady*, 456 U.S. 152, 170 (1982).

17    Petitioner has not shown any facts to establish that an objective factor external to the defense prevented

18    him from complying with the state requirements for appeal or other postconviction relief.  Because

19    petitioner has not established cause for the default, it is unnecessary to consider whether he was actually

20    prejudiced.

21        *Fundamental Miscarriage of Justice*:  The court may grant the writ to correct a fundamental

22    miscarriage of justice if petitioner can show that his conviction is the result of a constitutional violation and

23    that he is actually innocent.  *Murray*, 477 U.S. at 495-96.

24        In this case, petitioner did not specifically reference any constitutional provisions in his petition for

25    writ of habeas corpus, although he did do so in his traverse.  The court has broadly construed petitioner's

26    claims as they relate to constitutional provisions.

27        It appears that petitioner exhausted all of his claims before the California Supreme Court, with the

28    exception of the claim that the evidence was insufficient to convict him because the verdicts were

inconsistent.  *See* Dkt. 23, Lodged Document 5: Appellant's Petition for Review, at 1-2; and Lodged

Document 7, Petition for Writ of Habeas Corpus.  The acquittal on the gun charge was mentioned in

petitioner's direct appeal as part of his claim that the evidence was insufficient because there was

inadequate corroborating evidence to support the accomplice's testimony, not because the verdicts were

inconsistent. Although it is questionable that petitioner properly exhausted his insufficient

evidence/inconsistent verdict claim, the court has reviewed the claim on the merits.  *See* 28 U.S.C. §

2254(b)(2)(an application for a writ of habeas corpus may be denied on the  merits, notwithstanding the

failure of the applicant to exhaust the remedies available in state courts).

## STANDARD OF REVIEW

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in

the state courts unless the adjudication either  (1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2)

resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented to the state courts.  28 U.S.C. §2254(d). Under the "contrary to" clause, a federal habeas court

may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court

on a question of law or if the state court decides a case differently than the Supreme Court has on a set of

materially indistinguishable facts. *Williams v. Taylor*, 120 S.Ct. 1495, 1523 (2000). Under the

"unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the

correct governing legal principle from this Court's decisions but unreasonably applies that principle to the

facts of the prisoner's case. *Id.*

A determination of a factual issue by a state court shall be presumed correct, and the applicant has

the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C.

§2254(e)(1).

## DISCUSSION

### 1.    Prosecutorial Misconduct

Petitioner contends that the prosecutor made an inflammatory reference in opening statement to

Angela Dvorsky's murder, that this reference made it look like petitioner murdered Ms. Dvorsky, and that

this reference poisoned the jury.  In his traverse, petitioner also claimed that the prosecutor told the jury

ORDER
Page - 6

1  that Israel Sept said that he would give information about the murder in exchange for immunity and

2  protection for his family; petitioner claims that this statement implied that Sept wanted to protect his family

3  from petitioner.

4  In reviewing this claim, the California Court of Appeal concluded as follows:

5  The trial court denied a defense motion for mistrial after the prosecutor presented her opening
   statement. On appeal, however, defendant couches the issue in terms of prosecutorial misconduct.
6  Instead of asserting the trial court erred by denying the motion for mistrial, he asserts we must
   reverse based on prejudicial prosecutorial misconduct. We disagree.

7  In her opening statement, the prosecutor discussed the statement of one of the witnesses:

8
   "[The detectives] go in to speak to Israel Sept. The conversation is taped. In fact, there will
9  be-you will hear about three separate conversations, and they are all taped.

10 "And during the course of that first initially [*sic*] conversation the first time they meet him
   in prison, it is absolutely clear, absolutely clear that there are no promises made, no
11 concessions made of any kind to induce Israel Sept to give his statement. There is [*sic*] no
   deals. There is no nothing.
12
   "There is a conversation where Israel Sept says there is [*sic*] two things I want, I want to
13 see out of this. One is I want immunity, and the other is I want my family protected. I would
   like to move them to Nevada, but I want my family protected, and I want immunity.
14
   "The detectives say we can't give you immunity. The only person that can give immunity is
15 the District Attorney, that's it. We can't do it.

16 "They read him his Miranda rights. You have all heard them on t .v. You will hear them
   here. You have a right to remain silent. Anything you say can and will be used against you
17 in a court of law, et cetera. At the end of that they say do you still want to talk to us? There
   is [*sic*] no promises. He says yes.
18
   "And he essentially lays it out for them, what happened with Anthony Galati."
19
20 Later, the prosecutor told the jury about a witness, Angela Dvorsky, who was unavailable because she
   had been murdered.

21 "The detectives went out, and they interviewed all of these people or a great number of
   people including William Van Hill who will be here to testify. Larry Middlebrooks will be
22 here to testify. Middlebrooks is serving time for a drug conviction. He is in custody. You
   will figure that out as soon as he comes in. Patty Scott-Bostic, they talk to all of the people
23 in the apartment, corroborate what Israel Sept says except Angela Dvorsky, Angela
   Dvorsky six weeks after Anthony Galati's murder on May the 1st, 1998, was pulled out of
24 the river. She had been stabbed and left in the river. So there is no statement from Angela
   Dvorsky."
25
26 Defendant made no immediate objection to these statements about Sept's request for protection and
   the dead witness. Instead, defendant waited until after the prosecutor had finished her opening
27 statement. Defense counsel, moving for a mistrial, then complained to the court that the prosecutor
   should not have told the jury about Dvorsky's death or that Sept had requested protection for his
28 family. Counsel asserted the jury would conclude defendant killed Dvorsky and threatened Sept's
   family. The trial court indicated it wanted to instruct the jury concerning these specific facts and for
   what purposes they could be used but denied the motion for mistrial.

Speaking to the jury, the trial court reiterated that counsel's statements are not evidence. It continued: "During the opening statement, the People made reference that a Mr. Sept or someone asked as part of negotiations for immunity and the other thing, protection for his family. Did you hear her say that? [¶] There is no evidence at all that this defendant was going to do anything to that man's family or to him. If this comes in, the only way you may consider it is to go to his state of mind, what he thought, not that this defendant in fact threatened him in any way? Do you understand that? [¶] There was also a reference to a-I forgot the name of the lady that was found in a river, and the implication is that she was murdered. There is not going to be any evidence at all that will be presented here that this defendant was involved in any way in that. [¶] Do you all understand that? [¶] And you cannot speculate about that. You are to decide this case solely based upon what you hear under oath." The court then polled the jury to assure each juror understood.

Defendant asserts the judgment must be reversed for prejudicial prosecutorial misconduct. In doing so, however, he grossly overstates the record: "[Defendant] contends that however encompassing the court's admonition was, it could not cure the enormous prejudice caused by the prosecutor's 'testimony' that [defendant] murdered someone else and threatened the primary witness and his family." To the contrary, the prosecutor did not accuse defendant of murdering someone else or threatening the witness or his family, defendant's hyperbole notwithstanding.

Defendant's use of the word "testimony" in this contention refers to the Supreme Court's opinion in *People v. Hill* (1998) 17 Cal.4th 800, at pages 827 and 828, 72 Cal.Rptr.2d 656, 952 P.2d 673, where it calls a prosecutor's inclusion of facts outside the record in closing statement "unsworn testimony not subject to cross-examination." Here, however, the statements of fact came in the opening argument, before the parameters of admissible evidence had been fully explored. Furthermore, the trial court gave the jury specific instructions concerning these statements. Accordingly, the prosecutor's opening statement did not constitute testimony and made no such accusations.

Defendant claims the prosecutor "poisoned the jury with her inferences that [defendant] murdered Angela Dvorsky and threatened Sept's family."(Unnecessary capitalization omitted.) Speakers do not make inferences; however, hearers may do so. To the extent it may be suggested the prosecutor weakly implied that defendant committed wrongs against Dvorsky and Sept's family, the trial court's admonition intercepted any improper inference the jury might have drawn.

The prosecutor did not commit misconduct by stating that Sept asked for protection for his family. As noted by the trial court, such evidence could go to Sept's state of mind and assist the jury in determining his bias and credibility. Defendant asserts the statements concerning Sept amounted to improper vouching because it referred to matters outside the record to bolster the witness's credibility. As the trial court instructed the jury, the evidence was admissible as to the witness's state of mind. Indeed, Sept's request for immunity and concern for his family came out in testimony.

Furthermore, even if we assume, without deciding, that the prosecutor committed misconduct in mentioning the murder of Dvorsky, the misconduct does not require reversal. While a detective testified that Dvorsky was dead as of May 1, 1998, there was no further evidence presented concerning her death. "[P]rosecutorial misconduct in an opening statement is not grounds for reversal of the judgment on appeal unless the misconduct was prejudicial or the conduct of the prosecutor so egregious as to deny the defendant a fair trial."( *People v. Harris* (1989) 47 Cal.3d 1047, 1080, 255 Cal.Rptr. 352, 767 P.2d 619.)The trial court admonished the jury that the statements of counsel were not evidence and, in any event, not to draw the inference that defendant killed Dvorsky. The court further impressed the admonition on the minds of the jurors by polling them. Nothing in the record suggests the jury was incapable of following or failed to follow the court's strict instructions. (*See People v. Holt* (1997) 15 Cal.4th 619, 662, 63 Cal.Rptr.2d 782, 937 P.2d 213 [jurors presumed to understand and follow instructions].) Defendant was not denied a fair trial. There was no prejudice.

*People v. Puckett*, 2003 WL 22506535 at * 2-4.

To obtain relief for a claim of prosecutorial misconduct, the petitioner must show that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (explaining that fundamental unfairness requires more than that prosecutor's remarks were undesirable or even universally condemned).

Improper remarks must be viewed in context, considering the probable effect they may have had on the jury's ability to decide the case fairly.  *United States v. Young*, 470 U.S. 1, 11-12 (1985).  *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987);  *Hall v. Whitley*, 935 F.2d 164, 165 (9th Cir.1991).

A reviewing court should not presume that such a remark had its most damaging meaning or that the jury necessarily draw such a damaging interpretation.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 645-47 (1974).

If the trial court gives the jury a curative instruction, it is presumed that the jury will follow that instruction and disregard inadmissible evidence inadvertently presented to it.  *Greer v. Miller*, 483 U.S. at 766 n. 8.  *See also United States v. Davis*, 932 F.2d 752, 761 (9th Cir.1991),  *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

In opening statement, the prosecutor referred to the death of Angela Dvorsky "six weeks after Anthony Galati's murder", stated that she "was pulled out of the river"; and stated that "[s]he had been stabbed and left in the river." Dkt. 23, Lodged Document 17, at 14-15.  In addition, the prosecutor stated that, during a conversation Mr. Sept had with deputies, "Isreal Sept says there is two things I want, I want to see out of this.  One is I want immunity, and the other is I want my family protected.  I would like them to move to Nevada, but I want my family protected, and I want immunity." Dkt. 23, Lodged Document 17, at 7.

The trial judge instructed the jury that the jury should not consider what the lawyers represent to the jury on opening statement as proof. Dkt. 23, Lodged Document 17, at 67-68.  The trial judge further instructed the jury, as follows:

> During the opening statement, the People made reference that a Mr. Sept or someone asked as part of negotiations for immunity and the other thing, protection for his family.  Did you hear her say that?
>
> There is no evidence at all that this defendant was going to do anything to that man's family or to him.  If this comes in, the only way you may consider it is to go to his state of mind, what he thought, not that this defendant in fact threatened him in any way?  Do you all understand that?

There was also a reference to a – I forget the name of a lady that was found in a river, and the implication is that she was murdered.  There is not going to be any evidence at all that will be presented here that this defendant was involved in any way in that.

Do you all understand that?

And you cannot speculate about that.  You are to decide this case solely based upon what you hear under oath.

Juror Number Once, can you do that?

Dkt. 23, Lodged Document 15, at 68.

The trial judge then polled each member of the jury, and each member answered "Yes."  Dkt. 23, Lodged Document 15, at 68-69.

The prosecutor's comment in opening statement did not on its face implicate petitioner in Angela Dvorsky's death nor did the prosecutor state that petitioner had threatened Mr. Sept's family.  To the extent that the jury could have inferred from the statements that petitioner was involved in Angela Dvorsky's death or that petitioner threatened Mr. Sept's family, the instruction of the trial judge to the jury was clear and strong, and the trial judge polled each juror about the juror's abilities to decide the case solely based upon the evidence.  Each juror stated that he or she could decide the case solely based upon what the juror heard under oath.  Petitioner has not shown that, when viewed in the context of the case, the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process.

The California state court decisions rejecting petitioner's claim that the misconduct of the prosecutor in opening statement denied him a fair trial were not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  Petitioner's prosecutorial misconduct claim is without merit.

### 2.     Denial of Cross Examination

Petitioner contends that he was denied his Sixth Amendment right to Confrontation when the court prevented defense counsel from completing his inquiry into Sept's motives for framing petitioner, and allowed the jury to falsely believe that petitioner was responsible for another murder.  See Dkt. 36, at 10.

In reviewing this claim, the California Court of Appeal concluded as follows:

Defendant contends the trial court erred by limiting defense cross-examination of a witness

concerning bias. The contention is without merit.

During cross-examination of Israel Sept, defense counsel asked him if he had a good friend named Benny Campbell. After the witness replied affirmatively, the prosecutor objected on relevance grounds. The trial court called counsel to an unreported sidebar and then sustained the prosecutor's objection. Moments later, defense counsel asked Sept his reasons for coming forward and reporting defendant's involvement in Galati's murder. The testimony continued:

"A I stated that I had another problem, and another issue with [defendant].

"Q Like a grudge issue, a personal thing?

"A Yes.

"Q And that was prior to you coming forward, right?

"A Yes.

"Q What was that personal thing or grudge you had against [defendant]?

"A Because I felt he was the cause for a friend of mine's death.

"Q A friend of yours who died in a fire?

"A Yes."

At this point, the trial court stopped the questioning and excused the jury from the courtroom. The court then reminded defense counsel that it had asked counsel not to go into this issue. Defense counsel stated that the testimony was elicited to show Sept's motive for informing authorities concerning defendant's involvement in Galati's death. Responding to defense counsel's assertion that he would only spend five minutes on the issue, the court stated: "It may not take you that long. I don't see how you got five minutes worth coming [i]f the only thing you are asking him is his motive for getting up there and testifying, and you have asked him that."

Defense counsel remonstrated: "[T]he jury has a right to know-I just want to make a record. The jury has a right to know what happened was his friend-there was a fire at [defendant's] girlfriend. [Defendant] got everybody out except for [Sept's] friend who died of smoke inhalation." And later: "[Defendant] got everybody out except for Benny. Benny died and [Sept] holds that against [defendant] because he wasn't able to get everybody out of there. He got his girlfriend, his child and everybody except Benny."

The court prohibited further inquiry into the facts of the fire and death and told defense counsel: "Your limitations is [sic ] you can ask him his motive and what he indicated his motive was, he felt this defendant was responsible for the [death of Sept's friend] ."Defense counsel asked for a recess and then a continuance to seek a writ, but the trial court ordered him to proceed with his questioning of Sept.

On appeal, defendant asserts: "The court erred reversibly [sic, read prejudicially]. First, the court led defense counsel down a primrose path by telling him it would permit the inquiry into Sept's 'other' motives for testifying against [defendant]. Then, after defense counsel began his pursuit of this line of cross-examination, the court abruptly halted the questioning, leaving the jury to believe that [defendant] killed Sept's friend by some malicious means. After the damage was already done, the court told defense counsel it would permit inquiry into 'bias' but would not permit the defense to prove Sept's 'bias' has no basis in fact. [Citations.] ... [¶] The court had no discretion to preclude these highly relevant questions designed to expose Israel Sept's true motivation for falsely accusing [defendant]."

Defendant's argument mischaracterizes the record. The trial court did not lead defendant down a path to introduction of the evidence that Sept held defendant responsible for his friend's death. Instead, the record reveals the court directed counsel not to get into that issue. Defendant willfully ignored that directive. The trial court never deviated from its directive and, likewise, never excluded testimony concerning bias. Sept's possible bias resulted from the fact that he believed defendant was responsible for the death of his friend, regardless of whether that belief was justified. Defendant's apparently heroic acts to save others was irrelevant to Sept's bias.

In a hearing to settle the record, the trial court stated it did not limit testimony concerning Sept's motivation to testify against defendant. Trial counsel for defendant agreed and added: "[W]here I got limited is that the jury doesn't know it was an accidental fire, and there really is no blame on [defendant] even though Mr. Sept may see it differently...."

"Confrontation clause and fairness principles generally guarantee a criminal defendant the right to explore a witness's bias on cross-examination. (See *Davis v. Alaska* (1974) 415 U.S. 308, 316 [39 L.Ed.2d 347].) They do not, however, prevent the trial court from imposing reasonable limits on defense counsel's inquiry based on concerns about harassment, confusion of the issues, or relevance. (See *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679 [89 L.Ed.2d 674].)" ( *People v. Box* (2000) 23 Cal.4th 1153, 1203, 99 Cal.Rptr.2d 69, 5 P.3d 130.) Here, the limits imposed by the trial court were constitutionally reasonable and fair because the additional evidence defendant sought to introduce would not have shown additional bias. Accordingly, defendant's argument on appeal that the trial court prevented him from showing the witness's bias is factually unsupported and legally inadequate.

*People v. Puckett*, 2003 WL 22506535 at * 4-6.

Criminal defendants have a Sixth Amendment right to confront witnesses testifying against them at trial. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). This right to confront witnesses serves three important purposes: (1) to ensure reliability by requiring the witness to make statements under oath; (2) to submit the witness to cross-examination; and (3) to allow the jury to assess the witness' credibility. *California v. Green*, 399 U.S. 149, 158 (1970). The right to confrontation promotes both the reliability of criminal trials and the perception of fairness in the criminal justice system. *Lee v. Illinois*, 476 U.S. 530, 540 (986).

The right to confrontation is not absolute. Trial judges retain wide latitude to impose reasonable limits on such cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). No error occurs unless cross-examination is restricted in an area of critical importance and the denial of cross-examination was prejudicial. *Id.*, at 681-84. The state court's decision to exclude certain evidence must be so prejudicial as to jeopardize the defendant's due process rights. *Tinsley v. Borg*, 895 F.2d 520, 530 (9th Cir. 1990), *cert. denied*, 498 U.S. 1091 (1991).

The California Court of Appeal opinion accurately reflects the record. Defense counsel raised the issue of Mr. Sept's bias by asking whether Mr. Sept had a "personal thing" or "grudge" against petitioner.

Dkt. 23, Lodged Document 15, at 368.  Mr. Sept responded: "Because I felt he was the cause for a friend mine's death."  Dkt. 23, Lodged Document 15, at 369.  Defense counsel followed up with "[a] friend of yours who died in a fire?", to which petitioner responded "[y]es."  *Id.*  Although petitioner's counsel intended to ask followup questions to show that petitioner was actually not responsible for the death, the followup questions would not have been useful to Mr. Sept's alleged bias.  That questioning may have been useful to rebut an impression–raised by *petitioner* in pursuing this line of questioning–regarding Mr. Sept's participation in the death of a friend, but would not have been of further assistance in probing Mr. Sept's bias.  The trial court permitted petitioner to inquire about Mr. Sept's credibility.  Petitioner's right to Confrontation was not violated by the limits set on the cross examination of Mr. Sept.

The California state court decisions rejecting petitioner's claim that he was denied his right of Confrontation, by the trial court's limit on cross examination of Mr. Sept, were not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  Petitioner's Confrontation clause claim is without merit.

### 3.   Exclusion of Evidence

Petitioner contends that the trial court violated his right to Due Process by excluding hearsay evidence that Angela Dvorsky posed as a prostitute to set up men to rob and that a man was killed during one of these incidents; petitioner claims that the evidence was trustworthy and critical to the defense.

In reviewing this claim, the California Court of Appeal concluded as follows:

> During trial, the court, at defendant's request, held a hearing without the jury during which two witnesses, Randi Dvorsky and Amber Vadner, testified that Angela Dvorsky had told them that she had been involved in a scheme of posing as a prostitute and luring a victim into a trap where her accomplices would rob the victim. They each testified that Angela told them one of these robberies went bad and her accomplices killed the man. As noted above, Angela Dvorsky died before trial. The trial court rejected defendant's request to introduce this hearsay evidence to the jury because the court determined the evidence was untrustworthy.

> On appeal, defendant asserts the trial court abused its discretion by excluding the hearsay evidence. He claims it should have been admitted pursuant to Evidence Code section 1230, which allows for admission of declarations against interest. He further contends the exclusion of the hearsay evidence violated his constitutional due process rights. We conclude the trial court did not abuse it discretion.

> Evidence Code section 1230 provides: "Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected [the declarant] to the risk of civil or criminal liability, or so far tended to render invalid a claim by [the declarant] against another, or created such a risk of

making [the declarant] an object of hatred, ridicule, or social disgrace in the community, that a reasonable [person] in [the declarant's] position would not have made the statement unless [the person] believed it to be true."

"Under one of the statutory exceptions to the hearsay rule, a party may introduce in evidence, for the truth of the matter stated, an out-of-court statement by a declarant who is unavailable as a witness at trial if the statement, when made, was against the declarant's penal, pecuniary, proprietary, or social interest. A party who maintains that an out-of-court statement is admissible under this exception as a declaration against penal interest must show that the declarant is unavailable, that the declaration was against the declarant's penal interest, and that the declaration was sufficiently reliable to warrant admission despite its hearsay character. [Citation.] To determine whether the declaration passes the required threshold of trustworthiness, a trial court 'may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant.'[Citation.] On appeal, the trial court's determination on this issue is reviewed for abuse of discretion. [Citation.]" ( *People v. Cudjo* (1993) 6 Cal.4th 585, 606-607, 25 Cal.Rptr.2d 390, 863 P.2d 635, italics in original, fn. omitted.) "The trustworthiness of a statement against penal interest lies in the assumption that the declaration is so contrary to the declarant's penal interest that the statement would not be made by a reasonable person unless true. [Citation.]" (*People v. Hayes* (1999) 21 Cal.4th 1211, 1257, fn. 8, 91 Cal.Rptr.2d 211, 989 P.2d 645.)

Here, the statements of Angela Dvorsky, purportedly made to Randi Dvorsky and Amber Vadner, were somewhat against Angela's penal interest in that they supported the conclusion that Angela was involved in a robbery scheme and that it was while they were engaged in one of these schemes that a potential robbery victim was killed. However, Angela also stated she was not involved in the killing. This self-serving account made the overall statement less trustworthy. Furthermore, one of the witnesses said Angela was prone to exaggeration and commented, "[W]e didn't really believe her that she witnessed that." This testimony supports the trial court's conclusion the hearsay evidence was not sufficiently trustworthy, in light of the fact it would be presented without opportunity for cross-examination.

Since there was a basis for finding the hearsay evidence untrustworthy, the trial court did not abuse its discretion in excluding it under the hearsay rule. Proper exclusion of evidence under the well-established hearsay rule does not violate a defendant's constitutional rights. *(See People v. Smithey* (1999) 20 Cal.4th 936, 995, 86 Cal.Rptr.2d 243, 978 P.2d 1171.) Discretion is abused only when "the court exceeds the bounds of reason, all of the circumstances being considered."(*People v. Giminez* (1975) 14 Cal.3d 68, 72, 120 Cal.Rptr. 577, 534 P.2d 65.) For the reasons set forth above, we conclude the court's determination that the hearsay evidence was not sufficiently trustworthy under Evidence Code section 1230 was not an abuse of discretion.

*People v. Puckett*, 2003 WL 22506535 at * 6-8.

Federal courts defer to a state court's interpretation of state law unless the court's interpretation is untenable or amounts to a subterfuge to avoid federal review of a constitutional violation. *Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir.), *cert. denied* 459 U.S. 1055 (1982).

Habeas relief is unavailable for error in the interpretation or application of state evidentiary rules. *Estelle v. McGuire,* 112 S.Ct. 375 (1991); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985). In order to obtain habeas relief for a violation of state evidence rules, a petitioner must affirmatively demonstrate that the admission of the questioned evidence rendered the trial so fundamentally unfair as to

1  violate federal due process. *Butcher v. Marquez*, 758 F.2d 373, 378 (9th Cir. 1985).

2        The California Court of Appeal opinion accurately reflects the testimony of Randi Dvorsky and

3  Amber Vadner. *See* Dkt. 23, Lodged Document 15, at 30-52.  After hearing testimony from these

4  witnesses, the trial court excluded testimony regarding Angela Dvorsky's alleged statements to her sister

5  and Ms. Vadner, reasoning as follows:

6        THE COURT: In terms of the first witness, I watched the first witness, observed her credibility and
      demeanor.  She was not persuasive, first of all.  She had no meaningful facts.  She did not know

7        who the persons were that were involved in the alleged robbery and killing.  She did not know when
      the robbery or killing really basically took place.  She did not know why the robbery in fact took

8        place.  She did not now [sic] how the person was killed.

9        And the bottom line, she stated to her sister, basically that the other people did the killing, whatever
      the killing was, and that they, the other people, did the killing and her sister wasn't a participant in

10       the killing.  And that impresses me as a person who is avoiding responsibility in terms of – in terms
      of major complicity and minimizing their involvement.

11

12       In terms of the second witness, she was a little bit better.  She knew a little bit more. But even with
      her, the gist of her conversation is that this declarant stated that a robbery went down, she didn't

13       know – and there was a killing.  She did not know anything about it, that she did not participate,
      some other people did the killing.  And really, the impression of this witness, was, this last witness,

14       that she was trying to take the responsibility and blame for the killing occurring on her and put it on
      somebody else.

15       And the statement is both inculpatory and exculpatory.  It is inculpatory because she admits being at
      the scene of some crime where a murder went down, but it is mitigating and exculpatory because

16       she is blaming someone else in terms of the killing which certainly would be more serious than the
      robbery. She is mitigating her involvement.

17

18       I find that the statement is not trustworthy.  I will not admit it.

19 Dkt. 23, Lodged Document 15, at 54-55.

20       The trial judge analyzed the admissibility of Angela Dvorsky's alleged statements to her sister and

21 her friend under state evidentiary rules, and concluded that the statements were not sufficiently inculpatory

22 to be trustworthy.  The state appellate courts held that exclusion of the hearsay statements were not an

23 abuse of discretion under state law.  The federal court defers to the state court interpretation of state

24 evidentiary rules.  Moreover, the statements Ms. Dvorsky allegedly made to her sister and her friend were

25 vague as to time and place, did not identify the "friends" with whom she allegedly schemed, and did not

26 exclude petitioner as a participant in the crime.  Exclusion of the statements did not render the trial so

27 fundamentally unfair as to violate federal due process.

28       The California state court decisions rejecting petitioner's claim that he was denied Due Process

1    when the trial court excluded statements allegedly made by Angela Dvorsky to her sister and to a friend

2    were not contrary to or an unreasonable application of clearly established federal law, as determined by the

3    Supreme Court, nor did they result in a decision that was based on an unreasonable determination of the

4    facts in light of the evidence presented to the state courts.  Petitioner's Due Process claim is without merit.

5        **4.      Sufficiency of the Evidence**

6        Petitioner contends that (1) the testimony of William Vanhill was insufficient to corroborate the

7    testimony of Israel Sept, who was an accomplice to the murder; and (2) the verdicts were inconsistent

8    because the jury found that petitioner had used a firearm in the commission of the crime but acquitted him

9    of being a felon in possession of a firearm.

10       In reviewing petitioner's sufficiency of the evidence claim, with regard to corroboration issue, the

11   California Court of Appeal concluded as follows:

12       Defendant asserts the evidence was insufficient to support his convictions. Specifically, he claims
         the testimony of Van Hill was inherently incredible and therefore did not corroborate the testimony
13       of Sept, who was an accomplice. Viewed in its light most favorable to the judgment, the testimony
         of Van Hill was not inherently incredible. Therefore, defendant's assertion fails.
14
15       "The law requiring corroboration of accomplice testimony is well established. 'A conviction cannot
         be had upon the testimony of an accomplice unless it be corroborated by such other evidence as
16       shall tend to connect the defendant with the commission of the offense; and the corroboration is not
         sufficient if it merely shows the commission of the offense or the circumstances thereof....' (
17       [Pen.Code,] § 1111.)' "The requisite corroboration may be established entirely by circumstantial
         evidence. [Citations.] Such evidence 'may be slight and entitled to little consideration when
18       standing alone. [Citations.]' " ' [Citations.] ' "Corroborating evidence 'must tend to implicate the
         defendant and therefore must relate to some act or fact which is an element of the crime but it is not
19       necessary that the corroborative evidence be sufficient in itself to establish every element of the
         offense charged.' [Citation .]" ' [Citations.] In this regard, 'the prosecution must produce
20       independent evidence which, without aid or assistance from the testimony of the accomplice, tends
         to connect the defendant with the crime charged. [Citation.]' [Citation.] ' "Corroborating evidence
21       is sufficient if it substantiates enough of the accomplice's testimony to establish his credibility
         [citation omitted]." ' [Citation]." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1128, 36
22       Cal.Rptr.2d 235, 885 P.2d 1.)

23       Even assuming defendant is correct that the only evidence that potentially corroborates Sept's
         account of the murder came from the testimony of Van Hill, we disagree that Van Hill's testimony
24       was so inherently incredible that it entirely lacks probative value and thus fails to corroborate Sept's
         testimony. Van Hill saw defendant in his apartment on March 13, 1998. He heard defendant
25       aggressively demanding Galati's money and keys. He saw Galati on the floor and observed as
         defendant and Sept escorted Galati out of the apartment. The next day, Galati was found dead.

26       This evidence amply corroborates Sept's testimony. It places defendant and Galati together, with
         defendant exercising control over Galati. It connects defendant with the crimes against Galati and
27       lends credibility to Sept's testimony that defendant killed Galati.

28       Nonetheless, defendant asserts: "[B]efore trial, Van Hill could never identify [defendant] other than
         by the difference in height between Sept and his accomplice. The detectives asked him about how

he could identify [defendant] and he said it was only from seeing him from the back and the difference in height. Van Hill testified that he never saw any portion of [defendant's] face. Suddenly for the first time at the trial, Van Hill's memory was 'better' than it was four years earlier and he said he now knows it was [defendant] because he was able to recognize [defendant's] voice when Van Hill was in the hallway. This testimony is inherently incredible. No rational juror would believe it[,] yet that it what this jury had to do to find corroborating evidence of Sept's story."

The record is not as favorable to defendant as he would have us believe. While Van Hill did not see defendant's face the second time Van Hill came out of his bedroom, when he saw defendant and Sept standing over Galati and then escorting him from the apartment, that was not the first time Van Hill had seen defendant at the apartment that evening. Earlier, before Van Hill went to bed, defendant was already at the apartment. When Van Hill saw defendant the last time that evening, there was nothing in his appearance that led him to doubt it was the same person he had seen earlier. Van Hill's recognition of defendant's voice further assisted in the identification. Far from inherently incredible, Van Hill's testimony, when viewed most favorably to the judgment, constituted substantial evidence corroborating Sept's testimony.

Furthermore, other testimony placed defendant with Sept and Galati on the night of Galati's murder. Middlebrooks and Bostic both testified defendant was in Van Hill's apartment with Sept and Galati. Sept told them to stay in the bathroom because "defendant wants to kill everybody in the house."When they emerged from the bathroom, defendant, Sept, and Galati were gone. Together with the evidence that Galati died soon thereafter, this testimony, even without Van Hill's testimony, provided slight corroboration for Sept's testimony.

*People v. Puckett*, 2003 WL 22506535 at * 8-9.

Evidence is sufficient to support a criminal conviction if the record reasonably supports a finding of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320 (1979).  The question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id., citing Johnson v. Louisiana*, 406 U.S. 356, 362 (1972).

The record supports the facts as set forth by the California Court of Appeal.  Mr. Van Hill had seen petitioner with Mr. Sept a couple of times before the incident (Dkt. 23, Lodged Document 25, at 94-95); saw petitioner at his house the first of two times the evening of the incident, around 9 or 10 p.m. (Dkt. 23, Lodged Document 25, at 83-84); recognized petitioner's voice (Dkt. 23, Lodged Document 25, at 95); and identified him because of the height difference between petitioner and Mr. Sept (Dkt. 23, Lodged Document 25, at 96).  Mr. Van Hill's testimony sufficiently corroborates Mr. Sept's testimony, placing him in the room the second time petitioner was present at the apartment that night, with Mr. Sept and the victim. In addition, Ms. Bostic stated that she saw petitioner at the apartment that night. Dkt. 23, Lodged Document 15, at 192.

The testimony of Mr. Sept detailed petitioner's involvement in the murder of the victim.  There was

sufficient corroborating evidence in the record to support Mr. Sept's testimony.  A thorough review of the record establishes that the evidence, when viewed as a whole, was sufficient for a rational trier of fact to find petitioner guilty beyond a reasonable doubt.  The state court decisions rejecting petitioner's insufficient evidence claim were not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.

Petitioner contends that the jury rendered inconsistent verdicts when he was convicted of the special circumstance of being armed with a weapon but acquitted of being a felon in possession of a firearm. Inconsistent verdicts may stand when one of those verdicts is a conviction and the other is acquittal. *United States v. Powell*, 469 U.S. 57, 65 (1984);  *Dunn v. United States*, 284 U.S. 390, 393 (1932).  The underlying rationale of these cases is that the acquittal on one count may be explained as an exercise of lenity by the jury, and recognition that the jury's historic function, in criminal trials, as a check against arbitrary or oppressive exercises of power by the Executive Branch.  *United States v. Powell*, 469 U.S. at 65.

The state court decisions upholding petitioner's conviction, even though the inconsistent verdict issue was unexhausted, were not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.

Petitioner's insufficiency of the evidence claim is without merit.

**5.      Ineffective Assistance of Trial Counsel**

Petitioner contends that his trial counsel was ineffective because he failed to investigate or call alibi witnesses or the defense investigator at trial.

Petitioner raised this claim in his petition for writ of habeas corpus in the Sacramento Superior Court, which concluded as follows:

> Petitioner's conviction of first degree murder with special circumstances and related offenses was affirmed on appeal in November 2003 and became final in February 2004. He now claims that he received ineffective assistance of counsel in that trial counsel failed to investigate, interview and call witnesses that would have supported an alibi defense. The petition also suggests that there might be newly discovered evidence.
>
> **I. Ineffective Assistance of Counsel**

A petitioner seeking relief by way of habeas corpus has the burden of stating a prima facie case entitled him to relief. (*In re Bower* (1985) 38 Cal.3d 865, 872.) A petition for writ of habeas corpus should attach as exhibits all reasonably available documentary evidence of affidavits supporting the claim. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) To show constitutionally inadequate assistance of counsel, a defendant must show that counsel's representation fell below an objective standard and that counsel's failure was prejudicial to the defendant. (*In re Alvernaz* (1992) 2 Cal.4th 924, 937.) It is not a court's duty to second-guess trial counsel and great deference is given to trial counsel's tactical decisions. (*In re Avena* (1996) 12 Cal.4th 694, 722.) Actual prejudice must be shown, meaning that there is a reasonable probability that, but for the attorney's error(s), the result would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 694.) A petition alleging ineffective assistance of counsel based on the failure to obtain favorable evidence must show what evidence should or could have been obtained and what effect it would have had. (*People v. Geddes* (1991) 1 Cal.App. 4th 448, 454.)

Petitioner claims that trial counsel was ineffective for failing to trial investigate, interview, and call witnesses to support an alibi defense. He attaches the statements of several people who state that Petitioner was at a barbecue all day on March 12, 1998. First, none of the statements are made under penalty of perjury and are therefore inadmissible hearsay. Second, since the murder occurred sometime after 10:00 p.m. on March 13, 1998, the letters do not provide an alibi for the relevant period. Therefore, petitioner has failed to show that trial counsel's failure to interview or call these witnesses was deficient or that it resulted in any prejudice to Petitioner's case.

## II. Newly Discovered Evidence

Newly discovered evidence may be the basis for habeas relief if it undermines the prosecution's entire case. (*In re Clark* (1993) 5 Cal.4th 750, 766.) However, it must cast fundamental doubt on the reliability of the trial by pointing "unerringly to innocence or reduced culpability." (*Id.*) A writ of habeas corpus may be based on the grounds that false evidence that is "substantially material or probative on the issue of guilt or punishment was introduced against a person at any hearing or trial relating to his incarceration. (Pen. Code, § 1473(b)(1).) Evidence is material if there is a reasonable probability that it could have affected the outcome. Whether evidence is material is determined objectively, based on the totality of the circumstances. (*In re Pratt* (1999) 69 Cal.App.4th 1294, 1313.) Another way of stating the test is whether the false testimony undermines confidence in the outcome of the trial. (*In re Sassounian* (1995) 9 Cal.4th 535, 546.) The defendant has the burden of showing by a preponderance of the evidence that there was false evidence at the trial. (*Id.*)

The petition attaches a copy of an interview of Israel Sept that occurred on June 23, 2003, after Petitioner's conviction. In that interview, Sept claims that Petitioner came to the apartment, but then left and was not seen the rest of the night. At Petitioner's trial, Sept testified that Petitioner demanded money from the victim, Anthony Galati. Sept also testified that he, Petitioner, and others drove Galati to a rural area, where Petitioner got out of the car with Galati. Sept heard two gunshots and Petitioner returned to the car. Galati's body was discovered the next day. The 2003 statement contradicts Sept's trial testimony. However, the statement was not made under penalty of perjury, as was his trial testimony, and is therefore inadmissible. In addition, Petitioner identified a 2001 statement by Sept to Petitioner's investigator before trial that also stated that he did not see Petitioner rob anyone. The statement appears to have been used to attempt to discredit Sept's trial testimony. According to the opinion on appeal, Sept's trial testimony was corroborated by William Van Hill, who testified that he was in the apartment with Sept, Galati and others on the date of the murder. Later, he heard Sept and Defendant demanding Galati's money and keys; they grabbed Galati and took him out the front door. Given Sept's prior 2001 inconsistent statement, the jury was likely already aware that Sept had given a different version of the events that exculpated Petitioner. Other evidence corroborated Sept's trial testimony, which inculpated Petitioner and which the jury believed. Therefore, Sept post-conviction statement does not cast fundamental doubt on the reliability of the trial; nor does it show that there was false evidence presented at trial.

Dkt. 23, Lodged Document 11.

1   Petitioner filed a "Traverse to Answer to Petition for Writ of Habeas Corpus," which the

2   Sacramento County Superior Court construed as a motion for reconsideration. It denied the motion,

3   stating:

> This petition for writ of habeas corpus was denied on February 9, 2005 for failure to state a prima facie case for relief. The claim of ineffective assistance of counsel based on the failure to interview and call potential alibi witnesses was denied in part because the submitted statements of the potential witnesses were not signed under penalty of perjury. Petitioner resubmits four of the statements, now made under penalty of perjury. However, the new declarations do not address the additional reason that the claim was denied, which was that the statements purport to provide an alibi for March 12, 1998, and the crime occurred on March 13, 1998. Petitioner claims that the crime must have occurred on March 12 because witness Israel Sept testified that after the murder, Sept checked into a motel and motel records showed that Sept checked in on the morning of March 13. However, Sept testified that the crime was committed on the night of March 13 and into the morning of March 14. Other witnesses, including Larry Middlebrooks, William Van Hill and Patty Bostic, testified that the events occurred on the evening of March 13. In addition, the proposed alibis state that Petitioner left a family barbecue at 10:00 p.m. and returned sometime around 11:00 to 11:30 p.m. The statements present no alibi for the period after 11:30 p.m. Even if the crime occurred on the evening of March 12, the statements would not provide an alibi because the crime occurred sometime after 10:00 p.m. and into the next morning and the statements only show that Petitioner was at the barbecue during the day up until 10:00 p.m. and for sometime between 11:00 and 11:30. Petitioner has not shown that counsel's failure to interview the potential witnesses was deficient. As Petitioner has not stated any valid reason for granting the petition, the motion for reconsideration is denied.

14   Dkt. 23, Lodged Document 12.

15   In order to establish ineffective assistance of counsel, a petitioner must show that counsel's

16   representation fell below an objective standard of reasonableness and that the deficient performance

17   affected the result of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). There is a

18   strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

19   *Strickland*, 466 U.S. at 689. In order to demonstrate prejudice, the defendant must show there is a

20   reasonable probability that but for counsel's unprofessional errors, the result would have been different.

21   *Strickland*, 466 U.S. at 694. A "reasonable probability" is a probability sufficient to undermine confidence

22   in the outcome. *United States v. Bagley*, 473 U.S. 667, 682 (1985).

23   Under the first prong of the *Strickland* test, the question is whether counsel's assistance was

24   reasonable under the totality of the circumstances, viewed as of the time of counsel's conduct. *Strickland*,

25   466 U.S. at 690. To succeed under the first prong, the petitioner must show the attorney's conduct reflects

26   a failure to exercise the skill, judgment, or diligence of a reasonably competent attorney. *United States v.*

27   *Vincent*, 758 F.2d 379, 381 (9th Cir.), *cert. denied*, 474 U.S. 838 (1985).

28   Under the second prong, the petitioner must demonstrate prejudice, that but for counsel's

1  unprofessional errors, the result would have been different. *Strickland*, 566 U.S. at 694.  However, sheer

2  outcome determination is not sufficient to make out a Sixth Amendment violation; a proper prejudice

3  inquiry focuses on whether counsel's errors or omissions rendered the proceeding fundamentally unfair or

4  the result unreliable. *Lockhart v. Fretwell*, 113 S.C. 838, 842-44 (1993).

5         Petitioner contends that his trial counsel was ineffective because he failed to investigate and present

6  alibi witnesses.

7         In his petition to the Sacramento Superior Court for writ of habeas corpus, petitioner submitted a

8  statement from Mr. Sept, apparently to the defense investigator, stating that Mr. Sept set up petitioner in

9  order to obtain a plea agreement, and that petitioner did not come back a second time to the apartment the

10  night of the incident. Dkt. 23, Lodged Document 9, June 13, 2003 statement of Israel Sept.  Petitioner

11  contends that defense counsel was ineffective because he failed to call the defense investigator to testify to

12  what Mr. Sept told him. As noted in the order denying the petition for writ of habeas corpus, this statement

13  was not made under penalty of perjury.  Further, the statement is similar to a statement petitioner gave to

14  the defense investigator in 2001, prior to trial.  Dkt. 23, Lodged Document 9, December 12, 2001

15  statement of Israel Sept.  Petitioner's counsel cross examined Mr. Sept with the 2001 statement.  Dkt. 23,

16  Lodged Document 15, at 404-405.  Finally, petitioner has not shown that the rules of evidence would have

17  permitted petitioner's counsel to question the defense investigator about hearsay statements made to him.

18         Petitioner contends that the crime occurred on March 12, 1998, not March 13, 1998, and that he

19  had witnesses who would testify that he was at a barbeque on March 12, 1998.  Dkt. 23, Lodged

20  Document 8, Exh. A.  There is ample evidence in the record that the crime occurred on March 13, 1998.

21  *See* Dkt. 23, Lodged Document 15, at 82, 185, 218, 288.  Further, the statements do not provide an alibi

22  for the time after 11:30 p.m. on March 13, 1998.  In his traverse, petitioner states that his "mother, sister,

23  and girlfriend at the time can all vouch that he didn't leave the rest of the night, especially Kara since they

24  slept together."  Dkt. 36, at 25.  None of the statements petitioner provided in connection with his petition

25  for writ of habeas corpus to the Sacramento County Superior Court state anything about his whereabouts

26  after 11:30 p.m. on the night of the incident.

27         The state court decisions rejecting petitioner's ineffective assistance of counsel claim were not

28  contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme

1  Court, nor did they result in a decision that was based on an unreasonable determination of the facts in light

2  of the evidence presented to the state courts. Petitioner's ineffective assistance of counsel claim is without

3  merit.

4  **6.**      **Use of Prior Felony Conviction**

5  Petitioner contends that the jury was told about his prior offense of burglary even though he was

6  willing to stipulate to his status as a felon.  He claims that his trial counsel agreed to a stipulation without

7  petitioner's consent.

8  Habeas relief is unavailable for error in the interpretation or application of state evidentiary rules.

9  *Estelle v. McGuire,* 112 S.Ct. 375 (1991); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985).  In

10 order to obtain habeas relief for a violation of state evidence rules, a petitioner must affirmatively

11 demonstrate that the admission of the questioned evidence rendered the trial so fundamentally unfair as to

12 violate federal due process.  *Butcher v. Marquez*, 758 F.2d 373, 378 (9th Cir. 1985).

13 Respondent contends that this claim is procedurally barred because petitioner failed to object at trial

14 to the admission of the stipulation.  While this claim may be procedurally barred, the court has nonetheless

15 reviewed the claim on the merits.  *See* 28 U.S.C. § 2254(b)(2)(an application for a writ of habeas corpus

16 may be denied on the  merits, notwithstanding the failure of the applicant to exhaust the remedies available

17 in state courts).

18 Prior to trial, the court asked petitioner if he admitted a prior felony, burglary, in 1995.  Dkt. 23,

19 Lodged Document 15, at 5. There was disagreement between counsel about the stipulation.  See Dkt. 23,

20 Lodged Document 15, at 5-13.  During the trial, the stipulation was read to the jury, as follows:

21         The parties hereby stipulate to the following: This defendant, Jeremy Phillip Puckett, was convicted
         by plea of a felony, a violation of Penal Code section 459, first degree burglary, in 1995.  He was
22       eighteen years old.

23 Dkt. 23, Lodged Document 15, at 441-42.

24 It is unclear what constitutional violation petitioner is alleging in regard to this claim.  To the extent

25 that petitioner contends that his Due Process rights were violated by admission of this stipulation, he has

26 not shown that entry of the stipulation denied him the right to a fair trial.  To the extent that petitioner

27 contends his counsel was constitutionally ineffective, petitioner has not shown that agreement to the

28 stipulation was other than a tactical decision by his counsel to specify that the prior crime was a burglary

1   rather than to let the jury speculate as to the crime that constituted the felony.

2       The state court decisions rejecting petitioner's claim that his constitutional rights were violated by

3   admission of the stipulation regarding his 1995 conviction were not contrary to or an unreasonable

4   application of clearly established federal law, as determined by the Supreme Court, nor did they result in a

5   decision that was based on an unreasonable determination of the facts in light of the evidence presented to

6   the state courts. This claim is without merit.

7                              EVIDENTIARY HEARING

8       If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary

9   hearing may not be held in federal court unless (A) the claim relies on (1) a new rule of constitutional law,

10  made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or (2)

11  a factual predicate that could not have been previously discovered through the exercise of due diligence;

12  and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that

13  but for constitutional error, no reasonable fact finder would have found the applicant guilty of the

14  underlying offense.  28 U.S.C. §2254(e)(2) (1996).  Petitioner's claims rely on established rules of

15  constitutional law.  Further, petitioner has not set forth any factual basis for his claims that could not have

16  been previously discovered by due diligence.  Finally, the facts underlying petitioner's claims are insufficient

17  to establish that no rational factfinder would have found him guilty of the crime. Therefore, petitioner is not

18  entitled to an evidentiary hearing.

19                                  CONCLUSION

20      The state court decisions denying petitioner's claims for relief and upholding petitioner's

21  convictions were not contrary to or an unreasonable application of clearly established federal law, as

22  determined by the Supreme Court, nor did they result in a decision that was based on an unreasonable

23  determination of the facts in light of the evidence presented to the state courts.  The petition for writ of

24  habeas corpus should be denied and the case dismissed with prejudice.

25                      CERTIFICATE OF APPEALABILITY

26      The district court should grant an application for a Certificate of Appealability only if the petitioner

27  makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  To obtain a

28  Certificate of Appealability under 28 U.S.C. § 2253(c), a habeas petitioner must make a showing that

reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 120 S.Ct. 1595, 1603-04 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

When the court denies a claim on procedural grounds, the petitioner must show that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 120 S.Ct. at 1604.

In the event that petitioner appeals the denial of his habeas corpus petition to the Ninth Circuit U.S. Court of Appeals, the court has determined that a Certificate of Appealability should be denied. The court has reviewed all of the claim on the merits. Petitioner has not shown that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

Therefore, it is hereby

**ORDERED** that the petition for writ of habeas corpus is **DENIED**. A Certificate of Appealability is **DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 12th day of February, 2009.

ROBERT J. BRYAN
United States District Judge

ORDER
Page - 24